UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DANIEL SANCHEZ-MARTINEZ,<br><br>　　　　　　　　　　　Defendant. | Case No.: 17cr1509-L<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION [ECF NO. 72]** |

Defendant Daniel Sanchez-Martinez, ("Defendant"), has filed a Motion for Reconsideration ("Mot.") challenging this Court's denial of his second motion to dismiss the indictment. Defendant alleges that the Court committed clear error, warranting reconsideration of the prior motion, and dismissal of the second indictment. The government filed a Response in Opposition ("Oppo") to Petitioner's Motion. In response to this Court's Order requesting additional briefing, both parties filed Supplemental Briefing ("Supp. Br.") The Court has considered the Motion, Opposition and Supplemental Briefing and for the reasons below, **DENIES** Defendant's Motion for Reconsideration.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged by indictment on June 21, 2016 with one count of importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960 in case number

16cr1436-L. Although Defendant filed a request for discovery on July 21, 2016, the government did not turn over the bulk of discovery until November 2016. On March 23, 2017, the government filed a superseding indictment which asserted that Defendant intentionally imported over 1,000 kilograms of marijuana, thereby triggering a mandatory minimum sentence of ten years. Shortly thereafter, on May 4, 2017, Defendant filed a Motion to Dismiss the Indictment arguing that the Speedy Trial Act was violated by virtue of the delayed discovery production by the government, and asserting that the dismissal should be with prejudice in light of the fact that he was subsequently subjected to a superseding indictment which exposed him to a mandatory minimum sentence.

The Court conducted a hearing on May 30, 2017, during which the Court indicated it was planning to grant the motion to dismiss, but was still considering whether the dismissal should be with or without prejudice. At that time the Court determined that the primary prejudice Defendant suffered as a result of the Speedy Trial Act violation was exposure to the mandatory minimum sentence. The Court gave the government a few days to decide it if planned to re-indict Defendant without the mandatory minimum.

The parties reconvened at a hearing on June 5, 2017, during which the government told the Court it planned to re-indict Defendant without the mandatory minimum. In light of this representation, the Court stated that it was going to dismiss the indictment without prejudice. The prosecutor asked the Court to "stay the dismissal order" until June 9th, to allow time to put the case before the grand jury for a new indictment, and also to ensure Defendant was not released to Immigration custody, and potentially made unavailable for trial. (Reporter's Transcript at 22 Case No. 16cr1436-L (June 5, 2017) [ECF NO 63.) The Court consented to "stay it until the 9th." (*Id*.)

On June 6, 2017, the Court signed and dated the Judgment of Dismissal ("Judgment"), it was stamped "Filed" but the Judgment was not entered on the docket. On June 8th, Defendant was re-indicted without the mandatory minimum charge and the present case was opened. On June 12th, the Judgment of Dismissal was entered on the docket in case number 16cr1436-L.

Defendant filed a second Motion to Dismiss a week later, arguing that the new indictment inherited the Speedy Trial Act violation of the first indictment because it was filed prior to the Judgment of Dismissal being made final on June 12, 2017. While the motion was pending, the Court was notified that the Clerk of Court had a requirement that orders must be signed, dated, filed and entered on the docket on the same day. In keeping with this rule, the Court altered the date the Judgment of Dismissal was entered on the docket to June 6, 2017, to reflect the date it was signed, dated and stamped "Filed."

On July 6, 2017, the Court held a hearing regarding the second Motion to Dismiss. The Court held that the case was dismissed and judgment was entered on June 6, 2017 when the Judgment was signed, dated and file stamped, even though it was entered on the docket on June 12, 2017. The Court noted it had stayed the judgment at the government's request to "permit the Grand Jury to return the new indictment and avoid defendant's transfer to ICE custody which would make him potentially unavailable for trial." The Court denied the second Motion to Dismiss finding that the prior indictment was not pending when the government filed the new indictment on June 9, 2017, therefore the new indictment did not inherit the Speedy Trial Act violation. Defendant objected to the *nunc pro tunc* dating of the indictment, but the Court disagreed that it was objectionable.

II. **DISCUSSION**

Although the Federal Rules of Criminal Procedure do not specifically provide that motions for reconsideration may be considered in criminal cases, the Ninth Circuit has indicated that they may be filed and governed by federal Rules of Civil Procedure 59(e). *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000); *United Stated v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993). Rule 59(e) permits requests for new trial and for altering or amending a judgment only if "the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Here, Defendant argues the

Court committed clear error and is seeking a "prompt re-trial" if the Court does not dismiss with prejudice, therefore Rule 59(e) controls. (Mot. 2, 5.)

Defendant makes two arguments in support of his motion for reconsideration; First, he contends that the Court clearly erred by holding that the judgment took effect on June 6 because the Court expressly issued a stay of the judgment until June 9. (Mot. 5.) The effect of the stay was to keep the case pending until the Court entered the Judgment of Dismissal on June 12, 2017, which in turn meant that the government's indictment filed on June 8 inherited the Speedy Trial Act violation. Second, Defendant claims the Court clearly erred by "back-dating" or in essence issuing a *nunc pro tunc* order changing the date of the docketed entry for the judgment to June 6, 2017 when it was originally June 12, 2017, because there was no permissible reason to issue such an order. (*Id*. 7-8.)

The government argues decisively that the case was dismissed on June 6, 2017, and contends that the "administrative function of entering the judgment of dismissal into the docket is not dispositive." (Oppo. 3 [ECF NO 32.]) The government draws a distinction between the "effective" date of the order of judgment, and the "entry" date of the judgment, contending that the judgment went into effect on June 6, even if the prosecutor requested postponement of the entry of the judgment. (*Id*. 4.) In this manner, the "stay" requested by the government was intended only to postpone the entry of dismissal to avoid Defendant from being deported and did not reverse the Court's oral pronouncement of dismissal and change it to a later date. (Gov't Supp. Br. 2 [ECF NO 80.]) With regard to Defendant's contention that the Judgment was backdated, or entered *nunc pro tunc*, the government points out that to *nunc pro tunc* a judgment means that the entry on the docket is adjusted now for an error which was previously made, and this does not apply here because there was no error to correct as the date of the judgment never changed. (*Id*. at 3.)

### A. Entry of Judgment

The key issue before the Court is whether the judgment was entered on June 6 or if the "stay" enacted by this Court had the legal effect of postponing the judgment, thereby

4

rendering the indictment filed on June 8 a superseding indictment which inherited the Speedy Trial Act violation of the prior indictment.

Defendant argues that it is the very definition of the word "stay" that it is a postponement of a judgment, and the reason the prosecutor requested the stay was precisely for that purpose: the case needed to remain pending to keep Defendant in custody. (Mot. 6.) The government contends the June 12th entry of judgment was a purely ministerial act that had no legal significance, but that the judgment became final for legal purposes when it was pronounced on June 5th, and certainly no later than the date it was signed, June 6th. (Supp. Br. 3).

According to the Federal Rules of Criminal Procedure, a judgment must be signed, and the clerk must enter it. Fed.R.Crim.P. 32(k). Whether the clerk must "enter" it by acknowledging receipt of the order or by entering it on the criminal docket is unclear from the Rule. In the Southern District, a document is "filed" when it is accepted by the clerk or court clerk for noting in the criminal docket. Civ.Loc.R. 1.1.e.10. Yet, a judgment is entered for purposes of the time for appeal when it is entered on the criminal docket. Fed.RuleApp.Proc. 4(b)(1)(A)(i). Based on this statutory rubric, the moment when the clerk date stamps the order is the moment when it is entered for purposes of the time of appeal as this is when it is acknowledged as accepted. To hold otherwise would confer the legal import of the finality of entry of judgment to a clerical entry on the electronically maintained criminal docket, which cannot have been the intent of drafters of Rule 32.

Here, the date stamp of June 6th constituted the entry of judgment, as that was when the judgment was signed, dated and stamped "Filed" by the clerk. However, the Court agreed to the prosecutor's request for a "stay" to allow time for the government to file a new indictment. A stay is defined as: "1) The postponement or halting of a proceeding, judgment, or the like. 2) An order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Black's Law Dictionary*, (10th ed. 2014). As is evident from a review of the transcript from the June 5, 2017, proceedings, the prosecutor's intention was for the Court to suspend the issuance of the abstract of judgment which

directs the United States Marshal's to release a defendant. It was not to stay the entry of judgment itself. After the government announced its intention to proceed without the mandatory minimum charge, a discussion ensued during which the parties considered whether the language charging the mandatory minimum could be excised or if a new indictment needed to issue. ((Rptr's Tr. at 14, Case No. 14cr1436-L (June 5, 2017) [ECF NO 63.])

The government stated that the Court could strike the mandatory minimum language of the superseding indictment, but if it needed to get a new indictment, the prosecutor stated, "we would just ask for a week of time to refile with the initial charge." (*Id*. 15.) The Defendant stated that the mandatory minimum language could not simply be stricken and, as a result, the government agreed to return to the grand jury and seek a new indictment that did not include the mandatory minimum language. (*Id*. at 16.) The prosecutor then said "But I would just ask that leave to file, so if the Court is going to dismiss the indictment – the superseding indictment, if we can have a week from Wednesday --." (*Id*.) The Court then asked the parties "Now, you're going to be indicting. Is there *any issue regarding the defendant getting released beforehand*?" (*Id*. 22)(emphasis added).

At that point, the prosecutor clarified that this was the reason she was asking for a week and requested that the Court "stay the dismissal order," to keep defendant from being released to Immigration custody which might have resulted in him being deported before the new indictment was issued. If the judgment had been stayed in full, it would have been incumbent on the prosecutor to contact the Court when the government was ready to file a new indictment, a hearing would have been set to lift the stay, and once the stay had been lifted the government could have filed the new indictment to ensure it did not inherit the Speedy Trial Act violation. This did not happen here. Instead, it was the government's intent to suspend the "entry" of judgment, in essence postponing the issuance of the abstract of judgment which would keep Defendant in custody. Defendant was present when judgment was pronounced on June 5, and knew that his release was

6

17cr1509-L

stayed until June 9, yet did not object to the enactment of the stay of this portion of the judgment.[1]

For the above reasons, the Court finds the entry of judgment was completed on June 6, 2017, when the judgment was filed stamped, and the "stay" suspended only the issuance of an abstract of judgment for Defendant's release, therefore, the Court did not commit clear error when it denied Defendant's motion to dismiss the new indictment for violation of the Speedy Trial Act.

### B. Backdating or nunc pro tunc of Judgment

Defendant takes issue with the fact that the judgment was originally docketed on June 12, 2017, but the Court later altered the date on the docket to reflect the date the Judgment was signed, dated and file stamped to June 6, 2017, contending this is an inappropriate use of the Court's power to back-date, or issue a *nunc pro tunc* order. (Mot. 7.) The only legitimate use of the Court's ability to change the entry date of an order is to correct a clear mistake or prevent injustice, but Defendant argues that the docket entry reflected exactly what the Court intended when it granted the government's request for a stay i.e. it postponed entry of judgment to a later date and kept the prior case pending. (*Id*. 7-8). In addition, Defendant argues that there is no legal requirement that a judgment be entered on the docket on the same day it is signed despite the clerk's office requirement that orders be signed, dated, file stamped and entered on the docket on the same day. (*Id*. 8.) The government counters that the Court did not enter the judgment *nunc pro tunc* when it changed the docket entry date from June 12, 2017 to June 6, 2017,

---

[1] The Court notes that the purpose of retaining Defendant in custody was to re-indict, as the parties agreed during the hearing, and that probable cause existed for his continued custody based on the probable cause finding at the filing of the original charges. Defendant was arraigned on the new charges on June 12, 2017, which was within 72 hours of the dismissal of the prior case, number 16cr1436. Even if he had not been arraigned within the 72 hour window, dismissal of the indictment would not be warranted, instead Rule 5 would dictate suppression of evidence. See Fed.R.Crim.P. 5 ("A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge"); *United States v. Savchenko*, 503 F.R.D. 503, 506 (S.D. Cal 2001).

because the adjustment to the docket did not change the entry date of the judgment, it merely aligned the docketing date with the entry date. (Gov't Supp Brief 2-3).

"The power to amend *nunc pro tunc* is a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice." *Martin v. Henley*, 452 F.2d 295, 299 (9th Cir. 1971). The Court may use this power to make the record reflect what the court intended to express sufficiently at an earlier time, or failed to due to error or inadvertence. *See United States v Summer*, 226 F.3d 1005, 1009-10 (9th Cir. 2000). Here, the Court intended to make the judgment final when it was signed, dated and stamped "Filed." When the Court adjusted the docket entry to match the entry of judgment to June 6, it was correcting a clerical error to correctly reflect what the court intended to do at the earlier time. Accordingly, Defendant's challenge to the Court's adjustment of the docket entry date of the judgment fails.

III. **CONCLUSION**

The Court finds no clear error in its determination that the entry of the Judgment of Dismissal was on June 6, 2017. The Court recognizes that if the new indictment had been filed during the pendency of the superseding indictment in case 16cr1436 it would have inherited the Speedy Trial Act violation and would have been ripe for dismissal. However, the stay in that case only impacted the abstract of judgment, and not the entry of judgment, therefore, the new indictment restarted the Speedy Trial Act clock. Moreover, there was no clear error when the Court adjusted the docket entry date of the judgment from June 12, 2017 to June 6, 2017, the entry date of the judgment, as it was to correct a mistake. For the foregoing reasons, the Court **DENIES** Defendant's Motion for Reconsideration.

**IT IS SO ORDERED**

Dated: October 30, 2017

Hon. M. James Lorenz
United States District Judge

8
17cr1509-L